UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Cause No. 1:16-cr-219-WTL-TAB |
| RICKY DEAN CLARK, | ) | |
| Defendant. | ) | |

## ENTRY ON MOTION TO SUPPRESS

This cause is before the Court on Defendant Ricky Dean Clark's Motion to Suppress (Dkt. No. 35).[1] Specifically, Clark seeks to suppress the following: (1) statements he made on June 13, 2016; and (2) evidence obtained as a result of the statements. The Court held a hearing on the motion on March 29, 2018. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions. For the reasons explained herein, Clark's Motion to Suppress Evidence is **DENIED**.

### I. BACKGROUND FACTS[2]

On June 13, 2016, Detective Kurt Spivey and Detective Ginger Marshall went to Clark's home to question Clark regarding tips that they had received relating to illegal online activities

---

[1] The Motion to Suppress was amended to add a claim that Clark exercised his right to be free from self-incrimination. Dkt. No. 62.

[2] The facts are taken from the audio-recording previously submitted to the Court as part of the motion to suppress, and exhibits introduced at the hearing: stipulated facts, the deposition of Ginger Marshall, and the deposition of Kurt Spivey.

with children that Clark was allegedly engaged in.[3] The detectives did not have an arrest warrant for Clark or a search warrant for Clark's home or any of his possessions.

Clark's mother, Bonnie, answered the door and told the officers that Clark was home but sleeping. Clark's roommate was also inside the residence. Bonnie woke Clark up, and Bonnie and Clark invited the detectives inside. The detectives told Clark that the matter they wanted to discuss was sensitive and asked if he wanted to speak somewhere else or have his mother present, and Clark indicated that he would speak with the detectives in the presence of his mother.[4]

The detectives then began to question Clark about his online activities, including his screen name and the social media platforms he used. While detectives were questioning Clark, Clark stated that he thought he needed a lawyer and that he wanted an attorney to talk to. He also twice said that he did not want to incriminate himself. The detectives continued questioning Clark. When Spivey asked Clark whether images of girls were still on his phone, Clark acknowledged that some images that he had received from underage girls remained on his phone in the deleted files. After the detectives told Clark that they would apply for a search warrant for the house and the phone if Clark did not agree to let them see the phone, Clark stood up and walked to the bedroom, indicating that he would hand over the phone. Spivey followed him.

Once in the bedroom, Clark produced one phone. Spivey noticed that Clark had walked

---

[3]During their time in the residence, the detectives wore plainclothes, and their guns were not visible. Spivey did not touch his gun until the physical confrontation began. The detectives did not have handcuffs inside the residence.

[4]Clark's mother left the home twice during the interview—once to smoke, and once to take a dog outside. Clark never attempted to leave the residence during the interview.

<em>2</em>

past another phone on his way to pick up the phone that was on the floor. Spivey believed that the second phone was connected to a computer. When Spivey asked Clark about the second phone, Clark picked that phone up and unplugged it. As Spivey reached for that phone, Clark pulled the phone away and began attempting to destroy it. Spivey tried to grab the phone, but Clark resisted. Clark broke the phone into multiple pieces. Clark did not request that the detectives leave the residence until this physical confrontation began. Officers then placed Clark under arrest.

## II. DISCUSSION

In his Motion to Suppress Statement and Evidence, Clark argues that the statements he made were obtained in violation of his Fifth Amendment right to counsel and right against self-incrimination. Specifically, Clark asserts that his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), were violated because detectives continued to question him after he indicated that he wanted an attorney and that he no longer wanted to talk.

*Miranda* applies only when an individual is subject to custodial interrogation. *See, e.g.*, *California v. Beheler*, 463 U.S. 1121 (1983) (per curiam); *United States v. Shlater*, 85 F.3d 1251, 1256 (7th Cir. 1996). An individual is considered to be in custody when his movement is restrained to the degree comparable to a formal arrest. *United States v. Yusuff*, 96 F.3d 982, 987 (7th Cir. 1996). "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *United States v. James*, 113 F.3d 721, 726 (7th Cir. 1997) (quoting *Stansbury v. California*, 511 U.S. 318, 323 (1994)).

In determining whether a reasonable person in the suspect's shoes would have felt free to

3

leave, the Court considers "all of the circumstances surrounding the interrogation." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citation omitted and internal quotation marks omitted). Relevant factors include the location of the questioning, its duration, statements made during the interrogation, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of questioning. *Id.*; *see also United States v. Ambrose*, 668 F.3d 943, 956 (7th Cir. 2012) (in determining whether a person is in custody, a court should consider, among other things, whether the encounter occurred in a public place, whether the suspect consented to speak with officers, whether the officers informed the suspect that he was not under arrest, whether the interviewee was moved to another area, whether there was a threatening presence of several officers and a display of weapons or physical force, whether the officers deprived the suspect of documents needed to depart and whether the officers' tone was such that their requests were likely to be obeyed).

Here, the questioning took place in Clark's home. Clark and his mother invited the detectives in. Clark was given the option to have a private conversation with the detectives or to speak with them in front of his mother, and he made the decision to have his mother present. Clark's roommate was also in the home. Only two detectives questioned Clark. Neither wore a uniform, and their guns were not visible. Neither detective took handcuffs into the residence, and Clark was not physically restrained during the questioning. The interview lasted well under an hour. The tone of the questioning never became hostile or combative.

Thus, the Court finds that the circumstances surrounding the interrogation strongly support a finding that Clark was not in custody. As such, his *Miranda* rights had not attached, and the statements were not obtained in violation of his Fifth Amendment rights.

Clark also argues that the evidence seized should be suppressed. Only two items—the cell phones—were seized prior to the signing of the warrant. Clark turned over one cell phone to detectives, and detectives seized the other cell phone after Clark attempted to destroy it. The Court finds that the exigent circumstances exception to the warrant requirement applied to the seizure of the phone that Clark was attempting to destroy. *See Missouri v. McNeely*, 569 U.S. 141, 149 (2013) ("[W]e have also recognized that in some circumstances law enforcement officers may conduct a search without a warrant to prevent the imminent destruction of evidence." (citations omitted)). Accordingly, the evidence need not be suppressed.

### III. CONCLUSION

For the foregoing reasons, Clark's Motion to Suppress Statement and Evidence (Dkt. No. 35) is **DENIED**.

**SO ORDERED: 4/4/18**

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification